J-S41025-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WYATT LEE RICKRODE | : | |
| | : | |
| Appellant | : | No. 746 MDA 2022 |

Appeal from the Judgment of Sentence Entered April 21, 2022
In the Court of Common Pleas of Adams County Criminal Division at
No(s):  CP-01-CR-0000556-2020


BEFORE:   LAZARUS, J., MURRAY, J., and STEVENS, P.J.E.*

MEMORANDUM BY MURRAY, J.:                    **FILED JANUARY 19, 2023**

Wyatt Lee Rickrode (Appellant) appeals from the judgment of sentence

imposed after a jury convicted him of third-degree murder.[1]  We affirm.

The trial court recounted the underlying facts as follows:

On May 23, 2020, Jesse Carbaugh ([the victim]) and several of
his acquaintances entered onto the land at 3596 Chambersburg
Rd., Franklin Township, to retrieve a few large wooden poles that
the Carbaugh family had previously left on the property.  The
Carbaughs had rented the mobile home at 3596 Chambersburg
Rd. for a period and used the poles as part of a structure attached
to the back of the home.  The Carbaughs received permission from
the landlord to return to the property to retrieve the poles.

The new tenant at 3596 Chambersburg. Rd., [Appellant], despite
being notified in advance that the Carbaughs would be coming to
get the poles, claimed that he felt threatened by their presence
from the moment that they entered the property.  Appellant did

---

* Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2501 and 2502(c).

not know [the victim] before [ the victim] arrived at the property that day. An argument ensued between the parties as to how far into the back yard Dan Carbaugh, [the victim's] father, could drive his truck for purposes of loading the very heavy poles.

After the verbal argument, Appellant, who was visibly agitated according to eyewitness testimony, entered his mobile home. His family and friends were inside the home and observed Appellant walk to his bedroom, grab a shotgun, load ammunition into the weapon, and walk back toward the door to leave. Some of those acquaintances attempted to prevent Appellant from leaving with the weapon, even attempting to block his exit and grabbing onto him. Nevertheless, Appellant went out of the front door, walked down the front porch steps, and turned the corner of the home to confront [the victim].

Eyewitness testimony revealed that another verbal argument between Appellant and [the victim] ensued at that point. [The victim] was unarmed. A brief moment after the argument began, Appellant discharged the firearm at [the victim] from a distance of one (1) to three (3) feet away. The gunshot hit [the victim] in the stomach. He would later die as a result of that gunshot wound. Appellant asserted that he was acting in self-defense when he shot [the victim]. Consistent with that contention, Appellant would later assert the defense of justification at trial.

Trial Court Opinion, 7/22/22, at 1-2.

On February 11, 2022, the jury found Appellant guilty of third-degree murder. On April 21, 2022, following receipt of a pre-sentence investigation report (PSI), the trial court sentenced Appellant to 20 – 40 years in prison. On April 28 and 29, 2022, Appellant filed a post-sentence motion and an amended post-sentence motion, which the trial court subsequently denied. The instant, timely appeal followed.[2]

---

[2] Appellant and the trial court have both complied with Pa.R.A.P. 1925.

Appellant presents the following issues for review:

1. Did the lower court make the following errors in regard to admission of evidence?

    a) The court allowed Jesse Carbaugh to be referenced as "the victim" rather than "the deceased" in a self defense case.

    b) The court declined to admit references to the deceased having been incarcerated although it was part of the *res gestae* of the case.

    c) The lower court denied the Appellant's motion for a mistrial when the Commonwealth's expert rendered a key opinion which was not included in the expert's report.

2. Was the jury's verdict against the weight of the evidence?

3. Did the lower court make the following errors in regard to sentencing:

    a) The sentence was excessive.

    b) The court factored in lack of remorse although it was a self-defense case.

    c) The court took no action although the Commonwealth assured Appellant it would not raise the fact that Appellant was a "person not to possess [firearms]" at sentencing but then did raise it as a sentencing factor.

Appellant's Brief at 4-5 (reordered, footnote omitted).

In his first issue, Appellant challenges the trial court's denial of two motions *in limine* and his motion for a mistrial. Appellant's Brief at 25-34. We first address Appellant's motion *in limine* claims.

Initially,

When ruling on a trial court's decision to grant or deny a motion *in limine*, we apply an evidentiary abuse of discretion standard of review. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion. Instead, an abuse of discretion occurs only where the trial court has reached a conclusion that overrides or misapplies the law, or when the judgment exercised is manifestly unreasonable, or is the result of partiality, prejudice, bias or ill-will. Further, to the extent we are required to review the trial court's conclusions of law, our standard of review is *de novo* and our scope of review is plenary.

*Commonwealth v. Cook*, 231 A.3d 913, 919 (Pa. Super. 2020) (citations and quotation marks omitted).

Appellant first claims the trial court erred in denying his motion *in limine* requesting "Jesse Carbaugh be referred to as 'the deceased' or by his name and that he not be referred to as 'victim[.]'" Motion *in Limine*, 1/24/22, at 4 (unnumbered). Appellant cites no legal authority supporting his claim that using the world "victim" "unconstitutionally placed a burden upon [Appellant] to prove that the deceased was not a victim which contorted [Appellant's] presumption innocence and shifted the burden of proof." Appellant's Brief at 26.

Appellant similarly offered no legal support for his motion at trial. The trial court explained:

As there was no controlling authority to guide [the trial court's] decision on the issue, the Commonwealth pointed to the non-precedential decision in *Commonwealth v. Martin*, 268 A.3d 424 (Pa. Super. 2021) (non-precedential), *reargument denied* (Jan. 26, 2022), as persuasive.[3]

---

[3] *See* Pa.R.A.P. 126(b) (unpublished non-precedential memoranda decisions of Superior Court filed after May 1, 2019, may be cited for persuasive value).

The facts in **Martin** were similar to the case at bar. There, the defendant did not dispute that the victim's death was caused by the defendant discharging a firearm. **Id.** Like this case, the defendant claimed that the killing was justified. **Id.** As such, the defendant argued that the Commonwealth should have been precluded from referring to the deceased as the "victim." **Id.** Throughout Martin's trial, the Commonwealth referred to the deceased as "victim" forty-six (46) times. **Id.** The Superior Court found no abuse of discretion in allowing the term because the trial court provided the jury with a cautionary instruction addressing its use before the trial began. **Id.** The instruction informed the jury that the titles given to parties, such as "victim", must not influence their judgment in any way. **Martin**, 268 A.3d 424. The trial court's instruction also reminded the jury that counsel's arguments are not evidence, and that it is the jury's duty alone to decide the case based on the evidence as presented from the witness stand. **Id.** [The trial court] found **Martin** to be informative and denied Appellant's request consistent with its reasoning.

Based upon [the trial court's] pretrial ruling, [the court] provided [a] cautionary instruction to the jury before trial concerning how the Commonwealth might refer to Jesse Carbaugh throughout the course of trial. The pertinent part of [the] instruction was as follows:

> Throughout this trial you may hear the parties refer to Jesse Carbaugh in different ways and that's entirely appropriate because each side is allowed to frame the case according to its own theory of the case. You may hear Jesse Carbaugh referred to as either the deceased or Mr. Carbaugh or victim by the Commonwealth. The Commonwealth's theory of the case is that Jesse Carbaugh was the victim of a homicide. [Appellant's] theory is that [he] was acting in self-defense and Jesse Carbaugh was not a victim. Each party throughout the course of trial has the right to refer to those involved according to their own theory of the case.

[N.T., 2/7/22, at 11]. [The trial court] also took care to remind the jury of the Commonwealth's burden of proof:

As I mentioned, you will make sure that the Commonwealth has the burden of proving [Appellant] guilty beyond a reasonable doubt. The Commonwealth will have to prove the elements of the various charges against [Appellant] and prove beyond a reasonable doubt that he did not act in self-defense. The mere fact that [Appellant] has been arrested and charged with a commission of a crime in this case is not evidence of his guilt.

*Id.* at 11[]. Further, we informed the jury that statements and arguments presented by counsel are not evidence:

You should consider the statements and the arguments of counsel carefully. They are, however, not binding on you and they are not evidence.

*Id.* at 17[].

The law presumes the jury followed [the trial court's] instructions. *Commonwealth v. Gilliam*, 249 A.3d 257, 274-75 (Pa. Super. 2021[, *appeal denied*, 267 A.3d 1213 (Pa. 2021)]. [The trial court's] cautionary instruction was adequate to overcome any potential prejudice that Appellant may have suffered by the Commonwealth's referring to Jesse Carbaugh as "the victim" during the trial.

Trial Court Opinion, 7/22/22, at 10-12 (footnote added).

We agree with the trial court's assessment and discern no error in its reliance on *Martin*, *supra*. As Appellant has failed to show an error or abuse of discretion by the trial court, this claim merits no relief

Appellant next claims the trial court improperly denied his motion *in limine* to admit evidence regarding the victim's 2019 incarceration. Appellant's Brief at 26-27. Appellant requested "that reference to Jesse Carbaugh being incarcerated in November 2019 be admissible as part of the *res gestae* of the case." Motion *in Limine*, 1/24/22, at 5 (unnumbered). The

Commonwealth opposed the request, stating: "The defense provided no explanation of how this is relevant and only references that it is '*res gestae*' of the case." Commonwealth's Answer, 1/26/22, at 3 (unnumbered). Appellant did not respond to the Commonwealth's answer.

In his Rule 1925(b) statement, Appellant averred: "[The trial court] erred in ruling that reference[s] to the deceased being incarcerated were not admissible by [Appellant] when it was part of the *res gestae* of the case." Concise Statement of Matters Complained on Appeal, 6/28/22, at 1 (unnumbered).

On appeal, for the first time, Appellant explains that the victim's girlfriend began a relationship with Appellant following the victim's 2019 incarceration, which "provided a possible motive for [the victim's] aggression toward Appellant." Appellant's Brief at 27. Appellant concedes that he did not raise this theory before the trial court, stating, "A defendant does not need to 'show his hand' pre-trial." *Id.*

It is axiomatic that issues not first presented to the trial court are waived on appeal. Pa. R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Even issues of constitutional dimension are waived if they are not preserved in front of the trial court. *Commonwealth v. Cline*, 177 A.3d 922, 927 (Pa. Super. 2017). **Similarly, a litigant may not present a new or different legal theory in support of relief on appeal.** *Id.* All legal theories or arguments must first

be presented to the trial court, which can then correct error in the first instance before an appeal becomes necessary. "The appellate rules direct that an issue must be raised in the trial court in order to provide that court with the opportunity to consider the issue, rule upon it correctly, and obviate the need for appeal." *Gustine Uniontown Assocs., Ltd. ex rel. Gustine Uniontown, Inc. v. Anthony Crane Rental, Inc.*, 892 A.2d 830, 835 (Pa. Super. 2006).

Here, the trial court specifically noted, "Appellant included no information as to how said incarceration was relevant in the instant matter." Trial Court Opinion, 7/22/22, at 13. Because Appellant never raised the theory that evidence of the victim's incarceration was admissible to show the source of animus between the two men in the trial court, he waived it on appeal. *Cline*, 177 A.3d at 927. *See also Commonwealth v. Goolson*, 189 A.3d 994, 1000 (Pa. Super. 2018) (citations omitted) (appellant cannot raise new legal theory on appeal); *Commonwealth v. Kane*, 10 A.3d 327, 331 (Pa. Super. 2010) (courts may not act as counsel for a party).

Finally, in his first issue, Appellant claims the trial court erred in denying his motion for a mistrial based upon misconduct by the Commonwealth's expert witness, Dr. Wayne Ross. Appellant's Brief at 28-34.

We review the denial of a motion for mistrial for an abuse of discretion. *Commonwealth v. Chamberlain*, 30 A.3d 381, 422 (Pa. 2011). We have explained:

> In criminal trials, declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. It is also settled that **a mistrial is not necessary where cautionary instructions are adequate to overcome any potential prejudice**.

*Gilliam*, 249 A.3d at 274 (emphasis added; citations and quotations omitted).

Courts "must consider all surrounding circumstances before finding that curative instructions were insufficient and the extreme remedy of a mistrial is required." *Commonwealth v. Manley*, 985 A.2d 256, 266 (Pa. Super. 2009) (citation omitted). Lastly, "[w]hen the trial court provides cautionary instructions to the jury in the event the defense raises a motion for a mistrial, [t]he law presumes that the jury will follow the instructions of the court." *Commonwealth v. Parker*, 957 A.2d 311, 319 (Pa. Super. 2008) (citation and internal quotation marks omitted).

The trial court described the circumstances leading to Appellant's motion for mistrial as follows:

> During direct examination, Dr. Ross described the gunshot wound inflicted to Jesse Carbaugh, an image of which was displayed to the jury and entered into evidence as Commonwealth Exhibit No. 46.

> During Dr. Ross' explanation, the following exchange occurred between him and Commonwealth Attorney Stephen Zawisky, Esq.:

> > Dr. Ross: … [W]hen I give you these angles or measurements, think about [the victim]

- 9 -

lying flat on his back. The wound entered front to back, his front to back, slightly left to right and straight on in. So let me repeat that. His front to back slightly left to right, slightly left to right, and straight on in. [I]t wasn't going up or going down. It just went right in about 40 inches and we're able to see that wound in the belly and we were able to see the pellets where they were in his gut and we also put a rod in there to show the angle of the wound.

Attorney Zawisky: Now, when you say that you assume that he's laying down, you're talking about when he's laying down on the autopsy?

Dr. Ross: Right. Excuse me. Yes. **He's standing straight up when he gets shot.** When I examine him, right, he's lying flat and that's what I mean. Sorry.

[N.T., 2/9/22, at 356-57 (emphasis added)].

Trial Court Opinion, 7/22/22, at 15-16. Defense counsel did not lodge a contemporaneous objection to this testimony.

Following several unrelated questions, Attorney Kirstin L. Rice, Esq, Appellant's counsel, asked for a sidebar conference. At the conference, Attorney Rice argued that, in commenting on the respective positions of Appellant and the victim, Dr. Ross exceeded the scope of his expert report. N.T., 2/9/22, at 358. The trial court sustained counsel's objection. *Id.*

The Commonwealth completed its direct examination with no further objections. *Id.* at 359-61. On cross-examination, Attorney Rice questioned Dr. Ross extensively about the relative positions of the victim and Appellant

when Appellant fired the gun. *Id.* at 361-65. Two additional Commonwealth witnesses testified before the trial court recessed.

> At recess, Attorney Rice again raised the issue of Dr. Ross' opinion that Jesse Carbaugh was standing upright when he was shot. *Id.* at 436. Attorney Rice provided [the trial c]ourt with a copy of Dr. Ross' expert report, and requested **either** a curative instruction on the matter or a mistrial. [N.T., 2/9/22, at 436]. At that time, [the trial court] stated that there would not be a mistrial. *Id.* at 436[]. [The trial court] also noted that the Commonwealth only asked one question addressing Dr. Ross' statement, and [Appellant] asked about a dozen on the same subject on cross-examination. *Id.* at 436[]. Attorney Rice stated that she felt the questions were necessary because, had [Appellant] known that Dr. Ross would testify to that opinion, they would have brought their own expert witness in to testify. *Id.* at [436-37]. [The trial court] informed [Appellant] that [the defense] still had an opportunity to do so, as the trial had not yet concluded. *Id.* at 437[].
>
> [The trial court] then reviewed Dr. Ross' expert report and the transcript of his testimony in-chambers during recess and concluded that his opinion was consistent with the report. After recess, before the jury was present in the courtroom, [the court] explained to the parties:
>
>> First of all, there was no question at all from the Commonwealth eliciting [Dr. Ross'] response. The question from the Commonwealth was trying to orient the position of the [victim's] body concerning the autopsy position and the question was quote "when you say that you assume that he's lying down, you are talking about when he's lying down on the autopsy." Answer: "Right, excuse me, yes he's standing straight up when he gets shot. When I examine him, he's lying flat and that's what I mean. Sorry." [N.T., 2/9/22, at 356-57.]
>>
>> That's the extent of the Commonwealth's questioning with regard to any comment of [the victim] standing straight up. There was no objection at the time that statement was elicited and it was after two subsequent questions and on another track when

- 11 -

there was a request to approach the bench and even then not necessarily an objection just more of a complaint that there wasn't anything in the report.

Nonetheless, [the trial court] reviewed the report. There's actually a one sentence opinion that is only that it was a gunshot wound to the abdomen, manner of death is homicide. The rest of the report is a statement of facts and findings made by Dr. Ross during the course of his autopsy from which the various conclusions were reached.

*Id.* at [437-38]. Nevertheless, [the trial court] decided to provide a curative instruction to the jury before continuing the trial:

Ladies and gentlemen, before we get started with redirect examination of [Appellant], I need to address one issue with you and it pertains back to Dr. Ross's testimony. At a point during the testimony you'll recall he was being asked about his position relative to his examination of the body as being on the autopsy table and without being asked a question in that regard, he essentially said [the victim] was standing straight up when he gets shot. Prior to trial, there are reports that are issued and that opinion of Dr. Ross was not in any report at that time and it was a statement he made here.

My point in telling you all this is that may or may not be the case, but you may not rely on Dr. Ross' statement that [the victim was] standing straight up as determinative of that fact. ... It's for you to decide if that is in fact the case, but you may not rely on the Doctor's statement that that is the case at this point in time, okay?

[N.T., 2/9/22, at 439].

Trial Court Opinion, 7/22/22, at 17-18 (emphasis added). Attorney Rice did not object to the curative instruction or request a mistrial following that instruction.

- 12 -

Our Supreme Court has indicated a party's failure to object to an instruction, or seek further instructions, "indicate[s] his satisfaction with the instruction." *Commonwealth v. Jones*, 668 A.2d 491, 504 (Pa. 1995). Thus, we discern no abuse of discretion in the trial court's denial of Appellant's request for a mistrial. *See id.*

In his second issue, Appellant challenges the weight of the evidence. Appellant's Brief at 34-35. He contends, "This case falls squarely into the category of mistaken self-defense, and for that Appellant cites to the transcript as a whole, but specifically to the Appellant's opening statement." *Id.*

"A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict but seeks a new trial on the grounds that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice." *In re A.G.C.*, 142 A.3d 102, 109 (Pa. Super. 2016) (citation omitted). "Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth. v. Widmer*, 744 A.2d 745, 753 (Pa. 2000) (citation omitted).

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination of whether the verdict is against the weight of the evidence.

*Id.* (citation omitted).

Here, the trial court addressed this claim in its opinion, cited relevant law, and concluded the claim lacked merit:

> At Appellant's jury trial, the Commonwealth presented seventeen (17) witnesses, which included eyewitnesses to the murder. [Appellant] presented four witnesses, which also included eyewitnesses. Appellant himself testified. Ultimately, the jury found the Commonwealth's witnesses more credible than Appellant and the witnesses that he presented. [The trial court] had full opportunity to hear and see the same evidence presented to the jury. The facts discussed above fully support the jury's verdict. [The trial court was] not shocked by that verdict. In fact, as [the trial court] recall[s] the facts of the case and testimony presented, we would not have been shocked if the jury found Appellant guilty of murder in the first degree.

Trial Court Opinion, 7/22/22, at 9-10. The trial court's determination is supported by the evidence, and we discern no abuse of discretion or error. *See id.* Accordingly, Appellant's second issue does not merit relief.

In his third issue, Appellant challenges the discretionary aspects of his sentence, from which there is no absolute right to appeal. ***Commonwealth v. Solomon***, 247 A.3d 1163, 1167 (Pa. Super. 2021) (*en banc*). Rather, where the appellant has preserved the challenge by raising it in a post-sentence motion and timely appealing, he must (1) include in his brief a statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f); and (2) show there is a substantial question that the sentence is not appropriate under the Sentencing Code. ***Id.***; ***see also*** 42 Pa.C.S.A. § 9781(b).

Appellant preserved his challenge to the discretionary aspects of sentence in a post-sentence motion and his brief includes a Rule 2119(f)

statement. Motion for Post-Sentence Relief, 4/28/22, at 1-4 (unnumbered); Appellant's Brief at 8-10. Therefore, we examine whether the statement presents a substantial question. **See Commonwealth v. Brown**, 249 A.3d 1206, 1211 (Pa. Super. 2021) ("We examine an appellant's Rule 2119(f) statement to determine whether a substantial question exists." (citation omitted)). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Commonwealth v. Caldwell**, 117 A.3d 763, 768 (Pa. Super. 2015) (*en banc*) (citation omitted).

Appellant asserts his sentence was excessive because "[h]e had lived a practically blameless life until [the murder]. And yet he was sentenced at the very top of the standard sentencing range for Murder 3." Appellant's Brief at 12. Appellant also complains the trial court improperly considered his lack of remorse at sentencing despite his assertion of self-defense at trial. **Id.** at 13. Lastly, he avers that, despite promising that it would not raise the issue, the Commonwealth brought up Appellant was not allowed to possess a firearm at sentencing. **Id.** at 23. Appellant maintains this denied his right to allocution. **Id.** at 24-25. These claims raise a substantial question; thus, we will address their merits. **See Caldwell**, 117 A.3d at 770 ("This Court has ... held that an excessive sentence claim—in conjunction with an assertion that the court

failed to consider mitigating factors—raises a substantial question."); *Commonwealth v. Hardy*, 99 A.3d 577, 580 (Pa. Super. 2014) (right to allocute is of "paramount importance" and defendant need not show prejudice because of violation of that right); *Commonwealth v. Allen*, 24 A.3d 1058, 1064-65 (Pa. Super. 2011) ("[A] claim that a sentence is excessive because the trial court relied on an impermissible factor raises a substantial question.") (citations omitted).

In reviewing a challenge to the discretionary aspects of the sentence, we recognize:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 731 (Pa. Super. 2015) (citation omitted). Further, where, as here, the trial court sentenced within the guidelines, we may only vacate the judgment of sentence if it is "clearly unreasonable." 42 Pa.C.S.A. § 9781(c)(2).

Appellant first contends the sentence was excessive because "Appellant had a prior record score of 0." Appellant's Brief at 12. Appellant acknowledges the trial court imposed a sentence within the standard range of the sentencing guidelines but complains the guidelines for third-degree murder "subject

[Appellant] to the same standard range as a repeat felony or repeat violent offender." *Id.* at 13.

Appellant's claim does not merit relief. The trial court had the benefit of a PSI. "Where pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988). Further, where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code. *See Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010). We cannot conclude the trial court's standard-range sentence, under these circumstances, was unreasonable.

Appellant next argues that the trial court improperly considered his lack of remorse in fashioning Appellant's sentence. Appellant's Brief at 13-21. Appellant admits lack of remorse is not an impermissible factor but nevertheless maintains:

> [T]his principle is problematic when the defendant has asserted that he felt it was necessary to use deadly force and has fully asserted a defense of self-defense.

*Id.* at 14. Appellant does not cite to any legal support for the assertion a trial court cannot consider lack of remorse in unsuccessful self-defense cases. *See id.*

It is well-settled that lack of remorse is an appropriate factor to consider at sentencing. ***Commonwealth v. Begley***, 780 A.2d 605, 644 (Pa. 2001); ***Commonwealth v. Summers***, 245 A.3d 686, 695 (Pa. Super. 2021) ("Lack of remorse is an appropriate sentencing consideration.") (citation omitted). Here, the trial court considered the trial testimony, the statements of the both the victim's family and Appellant's family, Appellant's history of mental health problems, and his lack of a prior criminal record, before stating:

> One thing that has struck me throughout was not for a minute did I believe any of the testimony in this case concerning self-defense. I think the entire incident was unnecessarily escalated and provoked by [Appellant]. I've also noted throughout the course of trial and proceedings that there does not appear to be much, if any, remorse being shown by [Appellant] other than for the circumstances he finds himself in. There was no evidence, in my view, of provocation leading to the murder of [the victim].

N.T., 4/21/22, at 22-23.

In its Rule 1925(a) opinion, the trial court specifically addressed Appellant's contention that lack of remorse was not an appropriate factor to consider in a self-defense case:

> The fact that the defense of justification is raised does not negate a defendant's ability to be remorseful of the fact that a life was lost by that defendant's hand, or toward the family of the deceased. A defendant may be justified in taking a life in self-defense, but we would be confident to wager that most people would be horrified at having been forced to do so. Here, Appellant exhibited no such sentiment in words or demeanor.

Trial Court Opinion, 7/22/22, at 8 (citation omitted). We agree with the trial court's sound reasoning.

Lastly, Appellant claims the Commonwealth "misled" him into believing it would not emphasize at sentencing that Appellant was a person not to possess firearms, then reneged on this representation, interfering with Appellant's right to allocute. Appellant's Brief at 24; *see also id.* at 21-25.

The Pennsylvania Rules of Criminal Procedure require: "At the time of sentencing, the judge shall afford the defendant the opportunity to make a statement in his or her behalf[.]" Pa.R.Crim.P. 708(D)(1); *see also* Pa.R.Crim.P. 704(C)(1). It is the sentencing court's obligation to inform the defendant of his right to speak prior to sentencing. *Commonwealth v. Thomas*, 553 A.2d 918, 919 (Pa. 1989). Where the trial court fails to inform the defendant of his right, a resentencing hearing is required. *Id.*; *see also Commonwealth v. Hague*, 840 A.2d 1018, 1019 (Pa. Super. 2003) (holding failure to afford defendant right to allocution requires remand to allow for allocution prior to resentencing).

Our review discloses the trial court provided Appellant the right to allocute. *See* N.T., 4/21/22, at 20-21. Appellant and defense counsel addressed the court **after** the Commonwealth, and defense counsel specifically addressed the Appellant's status as a person not to possess a firearm. Counsel stated:

> I think you're also aware that [Appellant] had no history of violence and the incident in which he was [previously involuntarily mentally committed] was essentially a suicide attempt. He was hospitalized after, but it wasn't like he acquired guns after that. He grew up with guns. He had his first gun at the age of like five.

> I don't believe, and I find it hard to believe, that anybody would think that [Appellant] is a future threat to society.

*Id.* at 21. Appellant's claim the trial court violated his right to allocute lacks both record and legal support. Therefore, it does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/19/2023